## DeFranco v. Valley View
*[Cite as 8 AOA 345]*

*Case No. 57719*
*Cuyahoga County, (8th)*
*Decided November 29, 1990*

*Michael J. Flament and Daniel J. Ryan, 2000 Standard Building, Cleveland, Ohio 44113, for Plaintiff-Appellee.*

*Arthur P. Lambros and Neal M. Jamison, 5709 Smith Road Brook Park, Ohio 44142, for Defendant-Appellant.*

JOHN V. CORRIGAN, J.

On November 5, 1968, plaintiffs Adrian DeFranco, The DeFranco Company, Terra Vista Sand and Gravel, Inc. and plaintiff-appellee Terra Vista Estates, Inc. ("appel-

lee")[1] filed a complaint against defendant-appellant Village of Valley View ("appellant"). The complaint demanded that appellant return the principal of a bond, plus interest, which appellee had posted in 1961 with appellant in connection with a permit to mine sand and gravel. Appellant counterclaimed, alleging that in return for appellant's renewing appellee's 1961 permit to mine sand and gravel appellee had agreed to pay for the cost of installing a water main. Appellant further alleged that it had installed the water main and demanded that it be reimbursed by appellee.

The jury found for the appellee on the complaint and awarded appellee the sum of $95,000. On the counterclaim, the jury found in favor of the appellee and against the appellant.

The following evidence was presented to, and testimony heard by, the trial court:

Appellee was formed in the late 1950's for the purpose of mining gravel and sand on private land located within the village of Valley View. In 1961, appellant issued a permit to appellee allowing appellee to mine the property for a period of four year period.

The 1961 permit contained several requirements, including that appellee not excavate below 710 feet above sea level and that a buffer strip be maintained. The requirements were meant, in part, to prevent the excavation operation from contaminating area drinking wells. The 1961 permit also required that appellee reclaim the property after it completed the excavation. The 1961 permit was conditioned on a performance bond being issued by appellee for appellant. This bond was issued on December 6, 1961.

The 1961 bond provided, in part, "[t]he cash amount of the bond shall be deposited by the village in a special account or accounts in the Village's name, indicating Terra Vista Estates, Inc. Bond Account A, B, etc., which account shall be fully insured under the F.D.I.C. ***" The 1961 bond also provided that if appellant found that appellee had defaulted on the 1961 permit, then appellant could use the bond money to pay for the cost of curing the default.

The 1961 permit was due to expire on December 6, 1965. In the fall of 1965 appellee requested that the 1961 permit be renewed. In a letter dated November 23, 1965, appellee offered to build a water main near the property appellee was mining. Appellee explained that the purpose of building the water main was to allow it to mine the buffer strip which it was required to maintain by the terms of the 1961 permit.

Appellant granted appellee's request, issuing another four-year permit in 1966. Appellee issued another performance bond for appellant in 1966. The 1966 bond carried over the money from the 1961 bond, which by this point was in excess of $25,000. The bond also provided that "[i]t shall be considered a default if principal [appellee] has not constructed the water lined described in the attached letter of 11-23-65 by 12-6-69 unless such time be extended by the Council of the Village of Valley View."

By its terms, the 1966 permit was due to expire in December of 1969. In a letter dated October 24, 1969, appellee requested that the 1966 permit be renewed. In addition, the October 24, 1969 letter stated that appellee had been unable to install the water main because the Cleveland Water Department was not issuing water permits for areas without sewage facilities. This offer was renewed in a letter dated December 2, 1969.

Appellant again granted appellee's request and issued another four year permit in 1969. The 1969 permit included a provision requiring appellee to install the water main.

The 1969 permit was due to expire in 1973. A letter from appellee to appellant, dated November 19, 1973, requested that the 1969 permit be renewed. The letter also stated that appellee was still unable to install the water main because of the Cleveland Water Department's refusal to issue a permit.

In 1973 appellant again issued a four year permit. The 1973 permit also required that appellee install the water main.

The 1973 permit was due to expire in 1977. Although the record is unclear as to the exact date, it appears that in the late 1970's appellant installed the water main itself. In a letter dated November 19, 1977, appellee stated, among other things, that:

"We have been unable to fulfill the intent of our operation to remove materials from the remaining buffer strip. We were restricted from doing so in order to preserve the water supply of adjacent properties that depend on wells draining from our land. After 12 years of unavoidable delay a water main

has now been installed in late 1977 to service these homes."

Appellant denied appellee's request that the 1973 permit be renewed.

On April 10, 1981, appellee applied for a new permit. On July 7, 1981, appellant issued a four-year permit. The 1981 permit did not mention the water main. The 1981 permit did, however, state that "[t]he present cash bond in the amount of approximately $40,000.00 shall continue to be held by the Village of Valley View [appellant]."

In 1984, the property which appellee had been mining was sold to the federal government. As part of the transaction $100,000 was withheld to ensure that the land was reclaimed. It was stipulated at trial that the federal government subsequently determined that the land had been reclaimed and paid the $100,000 to the vendor of the property.

Adrian DeFranco, one of the founders of appellee and its majority stockholder, testified that at the time appellee offered to put in the water main it was understood that appellant's engineer Donald Bohning would perform the engineering work while he [appellee] would install the water main.

Mr. DeFranco further testified that between 1965 and 1977 he was not contracted by appellant concerning the water main. He also testified that beyond withdrawing money from the bond account, at appellee's request, to pay for preliminary plans of the water main, it did nothing to help appellee obtain the necessary permits.

In addition, Mr. DeFranco testified that because he was working with appellant and Mr. Bohning, he did not want to go directly to the City of Cleveland Water Department himself.

Arthur Westfall, the appellant's mayor since 1972, testified that from 1972 onward, if appellant had requested a permit from the City of Cleveland Water Department, it would have been granted.

Donald Bohning, appellant's engineer for the past twenty-three years, testified that the normal procedure for the construction of a water main would be as follows:

"Appellant's counsel would authorize the engineer to prepare plans, the plans would be submitted to The Cleveland Water Department, then appellant would petition the commissioners to waive the no sewer-no water

rule." Mr. Bohning testified that he was not aware of appellant ever being denied a variance. Mr. Bohning went on to testify that appellant would have to initiate the process of acquiring a permit for the installation of the water main from the Cleveland Water Department.

Mr. Bohning also testified that the construction cost for installing the water main in 1977 was $348,837.60 and the engineering cost was $23,713.73. Mr. Bohning stated that the total cost was $399,822.00. Mr. Bohning further stated that $140,299 was assessed to property owners and appellant paid $258,523.03.

Finally, Mr. Bohning testified that he had visited the property recently and that its condition was unchanged. He stated that the land would have to be leveled before it could be considered reclaimed.

Mario DeSansi, a certified public accountant, testified on behalf of appellee. Mr. DeSansi presented various calculations showing how much money would exist in the bond account based on various interest rates of six, seven, nine, ten and eleven percent.

Appellant filed a timely notice of appeal and raises the following assignments of error:

"I. THE TRIAL COURT ERRED BY FAILING TO CHARGE THE JURY AS TO THE AMOUNT OF MONEY DAMAGES THAT PLAINTIFF WAS DEMANDING.

"II. THE TRIAL COURT ERRED IN AWARDING PLAINTIFF $95,000.00 FOR THE REASON THAT THE PLAINTIFF IN SEEKING A JUDGMENT FOR MONEY DAMAGES FAILED TO PLEAD THE AMOUNT OF HIS DEMAND FOR MONEY DAMAGES PRIOR TO TRIAL.

"III. THE TRIAL COURT ERRED IN AWARDING PLAINTIFF DAMAGES IN THE AMOUNT OF $95,000.00 FOR THE REASON THAT THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

"IV. THE TRIAL COURT ERRED IN FINDING FOR THE PLAINTIFF ON ITS CLAIM FOR THE REASON THAT THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

"V. THE TRIAL COURT ERRED IN FINDING AGAINST THE DEFENDANT ON ITS

COUNTERCLAIM FOR THE REASON
THAT THE DECISION IS AGAINST THE
MANIFEST WEIGHT OF
THE EVIDENCE."

In its first assignment of error, appellant contends the trial court erred by failing to charge the jury as to the amount of money damages appellee was demanding.

During the course of the trial, appellant filed proposed jury instructions pursuant to Civ. R. 51. Appellant's proposed jury instructions the trial court refused stated in pertinent part:

"The general rule for the measurement of damages is that the party who has performed all of his obligations and whose contract has been breached is entitled to fair and reasonable compensation for his loss. Furthermore, if the claim of the defendant is found to demonstrate a contract for the construction of a water pipeline, then you must award to the defendant, the amount of the engineering fees and costs defendant incurred in designing and constructing the water pipeline minus any monies plaintiffs have already paid."

At trial, appellant objected to the trial court's jury instruction and requested that the amount of damages be limited to the sum actually in the bond account.

In its instructions to the jury, the trial court stated in pertinent part:

"The plaintiff must show that the defendant breached the terms of the bond. The bond is breached when one party, without just cause, fails or refuses to perform his agreement, even though the other party has performed all he was required to do under the terms of the bond.

"If the actions or inactions of a party prevent the other party from performing or not performing requirements under the bond, the party will not be held responsible for failure of performance.

"If you find that the defendant, village of Valley View, breached the bond, you must award to the plaintiff, Terra Vista Estates, Inc., the amount of the bond and interest.

"The counterclaim. The defendant has a counterclaim against the plaintiff. This means that the defendant has a claim in relation to the same occurrence against the plaintiff. The defendant alleges that there was a promise by the plaintiff to pay for the engineering and construction of a water main, and that this promise constituted a contract.

"If you find that an agreement was formed whereby the plaintiff promised to supplement the bond money, already on deposit with the city, with further monies needed to design and construct a water main, you must find that a contract existed. If you find that the city performed pursuant to an agreement, you must find that the failure of the plaintiffs to make further payments constitutes a breach of the agreement.

"If the claim of the defendant is found to demonstrate a contract for the construction of a water main, then you must award to the defendant, the amount of the engineering fees and costs incurred by the village in designing and constructing the waterline, minus any monies plaintiffs have already paid." (Tr. 268-269).

After reviewing the record, we find that appellant's first assignment of error is not well taken. First, we find no substantial deviation between appellant's proposed jury instructions and the trial court's actual instructions. Second, the original bond which set up the bond account did not designate an interest rate. The amount of interest to be added to the amount in the bond account, therefore, became a jury question. The trial court correctly overruled appellant's objection in this regard.

Appellant's first assignment of error is not well taken.

For its second assignment of error appellant contends that the trial court erred when it awarded appellee $95,000 because appellee failed to plead the amount of its demand for money damages prior to trial.

Civ. R. 54(C) states in pertinent part:

"[A] demand for judgment which seeks a judgment for money shall limit the claimant to the sum claimed in the demand unless he amends his demand not later than seven days before the commencement of the trial. Additional service of process is not necessary upon such amendment. ***"

In *Bishop v. Grdina* (1985), 20 Ohio St. 3d 26, the Ohio Supreme Court stated that "Civ. R. 54(C) is clear on its face[,] [n]o damages awarded may exceed the prayer that is in effect on the sixth day prior to trial." *Id.* at 28. The *Bishop* court also noted that "[a] major purpose of the limitation in the rule is to put the defendant on notice prior to trial as to his potential liability." *Id.*

In the instant case, appellee did not set forth a specific monetary sum in its pleadings. Appellee did, however, allege in its pleadings that "[t]he Defendant [appellant] was to place the bond money in a lending institution and insure that the money would be interest bearing at a rate that was the highest available rate during the holding of the bond." Complaint, paragraph 9. In addition, in appellee's prayer for relief appellant was put on notice as follows:

"WHEREFORE, the plaintiffs demand judgment in that the defendant be ordered to return the funds to the plaintiffs immediately.

"Further, Plaintiffs pray from this Court an order directing the Defendant Village to distribute immediately the funds from the escrow account set up from the present transaction."

This court finds that in the great majority of cases a party seeking monetary damages must specify a monetary sum which then becomes the upper limit for that party's damages. We further find that the purpose of this requirement is to give the opposing party sufficient notice of its potential liability. In the instant case, however, we find that appellee did not need to specify a monetary sum since the pleadings provided appellant with sufficient notice that it was potentially liable for the original amount of the bond plus interest.

Civil R. 54(C) does not require that a monetary judgment damage be stated as a dollar figure. Rather, the rule limits the recovery of the claimants to the damage claimed in the demand. Since the record establishes that the judgment award to the appellee was limited to the demand made by the appellee in the complaint, such award was in compliance with Civ. R. 54(C). See *Fraternal Order of Police v. City of Willowick* (1985), unreported, Court of Appeals Lake County No. 11-085.

Appellants' second assignment of error is not well taken.

For its third assignment of error appellant contends that the trial court erred in awarding appellee damages in the amount of $95,000.00 because the verdict is against the manifest weight of the evidence.

In *Hathaway v. Johnson* (1918), 11 Ohio App. 357, the court stated:

"A reviewing court will not disturb a verdict because of an award of excessive damages, unless the amount awarded is so disproportionate to the damages shown by the evidence to have been sustained as to convince the court that the jury, in rendering the verdict, was governed by passion, prejudice or feeling rather than by cool, calm judgment." *Id.* at the syllabus.

The bond agreement did not specify what the interest rate should be. Appellee presented evidence concerning how large the bond account would be with various interest rates (6%, 7%, 8%, 9%, 10%, 11%). In awarding appellee $95,000, the jury presumably chose the six percent interest rate, which Mr. DeSanci stated would have accrued in the amount of $94,911.93.

Based upon the record, therefore, we do not find that the award of $95,000 was against the manifest weight of the evidence.

Appellant's third assignment of error is not well taken.

For its fourth assignment of error, appellant contends that the trial court erred in finding for appellee because the verdict is against the manifest weight of the evidence.

In *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279, the court stated that:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *Id.* at the syllabus.

After a review of the record, we find that there was sufficient evidence for the jury to reach the conclusion that appellee was entitled to recover the bond plus interest. The jury could also find that appellee had reclaimed the land as required by the bond agreement. We find that the jury's verdict for appellee was not against the manifest weight of the evidence.

Appellant's fourth assignment of error is not well taken.

For its fifth assignment of error, appellant contends that the trial. court erred in rejecting its counterclaim because the decision is against the manifest weight of the evidence.

After reviewing the record, this court finds that the jury could reach the conclusion that the appellant failed to establish its claim

relative to construction of the water main. While the evidence revealed that the applications for the permit and its renewals mentioned the water main, the Village made no teal issue of the construction until this lawsuit was filed. The Village acquiesced in the company's explanation about the Cleveland Water Department, continued to issue the permit, made no attempt to revoke the permit, and eventually constructed the water main assessing the cost to all the property owners. Based upon *C.E. Morris, supra,* we find that the trial court's decision was not against the manifest weight of the evidence.

Appellant's fifth assignment of error is not well taken.

The judgment of the trial court is affirmed.

JOHN F. CORRIGAN, J., and McMANAMON, J., concur.

---

[1] Plaintiffs Adrian DeFranco, The DeFranco Company and Terra Vista Sand and Gravel, Inc. were voluntarily dismissed at trial.